# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

**Christina M. Potter,**

                *Plaintiffs,*

**v.**

**Jeffery D. Havlicek,**

                *Defendant.*

Case No. 3:06-cv-211

Judge Thomas M. Rose

---

**ENTRY AND ORDER DENYING PLAINTIFF'S DEMAND FOR A PRELIMINARY INJUNCTION.** (DOC. 16).

---

Pending before the Court is a motion requesting an injunction forbidding Defendant Jeffery Havlicek from "any use, disclosure, copying, dissemination or destruction of electronic communications, electronic files, data recordings, audio recordings, video recordings, and any other documents, objects, information, or data, in his possession or control which contain or relate to any statements, communications, writings, thoughts, images, sounds, ideas or personal information of Plaintiff Christina Potter." Doc. 16, at 1. Defendant has responded to the motion. Doc. 18. Plaintiff has replied, doc. 19, rendering the motion ripe.

The case is tangentially related to the divorce of Defendant Jeffery Havlicek from his wife, Amy Havlicek. According to Plaintiff Christina Potter's affidavit, Plaintiff came to know Amy Havlicek sometime around December of 2004. Potter began exchanging emails and instant messages with Amy Havlicek almost a year later, several months before Amy Havlicek moved out

of her home with Defendant Jeffery Havlicek in December 2005. Christina Potter and Amy Havlicek maintained these communications for several months thereafter.

Some time later, Potter learned that Jeffery Havlicek procured copies of Potter's electronic communications with Amy Havlicek. She learned this when Amy Havlicek's legal counsel showed her copies of them in March 2006. Potter affies that Jeffery Havlicek had neither her nor Amy Havlicek's permission to access the communications.[1] Amy Havlicek further claims that her legal counsel advised her that Jeffery Havlicek and his legal counsel had made statements reflecting knowledge of Potter's bank accounts and certain financial transactions. From this information, Potter concludes that Jeffery Havlicek accessed Potter's email accounts by secretly obtaining her password without permission. Potter also claims that Jeffery Havlicek viewed copies of her electronic communications directly from her communications service providers, Yahoo and AOL. Potter further claims that Jeffery Havlicek used the contents of the electronic communications thus acquired by providing them to a "custody evaluator" appointed by the Court, as well as others, including his legal counsel, but also neighbors, friends and business associates with the intent to harass, annoy and inflict emotional injury on Potter.

Matters regarding discovery also appear to require the Court's attention, as Potter's counsel affies that Defendant has refused to identify, disclose, and/or produce the electronic files, records, recordings, communications, and/or the computers containing the electronic communications or other evidence relevant to this matter. Doc. 16, at 1. Jeffery Havlicek apparently has some idea what documents would be responsive to such a request, as he informed the Common Pleas Court of Greene County Ohio, Division of Domestic Relations, "that he has legally obtained access to electronic evidence and documents which he intends to submit to th[e] Court." Doc. 16, at 10. This

---

[1] The Court recognizes the secondary assertion as necessarily relying on hearsay.

statement was made in a filing responsive to a motion by Amy Havlicek to preclude use of these documents in their divorce proceedings in the Greene County Court of Common Pleas.

Potter further directs the Court's attention to other allegations in Jeffery Havlicek's affidavit filed in state court to provide a factual basis for her motion. According to Havlicek, "[t]he electronic evidence/documents was obtained by various means including, but not limited to video recording; collection of election files and cookies from a computer owned by affiant and defendant; computer activity monitoring software installed on affiant's and defendant's computer that tracks computer usage including keyboard strokes, display screens, and website logs; [and] access of electronic mail through stored "remember me" password-saved accounts."  Doc. 16, at 10.

In his affidavit, Jeffery Havlicek describes the computer as being available to the couple's teenage children and to house guests.  Doc. 16, at 11, 12.  Jeffery Havlicek asserts that he never installed any hardware to intercept any messages, but rather installed surveillance software on the computer.  Havlicek describes the software as collecting keyboard typing and screen shots and requests for access to websites.  He claims that the keystroke software collects its information not from the modem but directly from the keyboard.  He writes, "The screen shot logging feature is similar to hitting the 'print-screen' button on most keyboards.  It saves an image of what appeared on the monitor.  Since the file is collected from the original computer, the file is again internal to a single computer and no transmission is required.  The same effect may be produced by training a video camcorder on the monitoring screen in the privacy of one's own home.  Further, the list of requested websites collected by the software is similar to history records automatically recorded in cookies saved by web browser software."  Doc. 16, at 12.

Jeffery Havlicek further states that he obtained other emails "by accessing e-mail accounts from web browsers where [Amy Havlicek] had selected the 'remember me' feature on [the] home

computer." *Id.* He describes these as "just more readable duplicates of the same electronic evidence collected in keyboard logs and screen captures." *Id.* He adds:

> the e-mails collected using the 'remember me' settings were collected at a time when [Amy Havlicek] knew [he] was using the…computer; knew that [he] had access to the computer, and knew that [he] was seeking [her] personal information from the…computer. Knowing this, [she] still chose to leave 'remember me' features on so that anyone could start the computer and go to [her] e-mail accounts and read her email without a password or monitoring software.

Doc. 16, at 12.

Jeffery Havlicek further claims to have "never accessed a computer belonging to Christina Potter and has never been inside Ms. Potter's household." Doc. 16, at 13. Havlicek claims that these intercepted communications are relevant to issues including "allocation of parental rights and responsibilities; division of assets and liabilities; spousal support and attorney fees." Doc. 16, at 13. Finally, he informed the Greene County Court of Common Pleas that, if the divorce proceeds to trial, he intends to submit to it "approximately 80 keyboard and website log files in *.html format and a similar number in an alternative *.csv format; over 2000 individually time and date stamped automated screen captures in *.jpg format; approximately six video tapes in DV tape format; approximately six audio tapes in mini-audio tape format; numerous files produced from defendant correspondence while in the marital household mostly in *.bmp, *.gif, or *.jpg formats; approximately 24 electronic documents from diaries, love letters, etc..., in *.pdf, *.doc types of formats mostly taken directly off the Dell hard drive."

Christina Potter filed an action in this Court on July 13, 2006. Potter's Amended Complaint, Doc. 15, filed with this Court December 4, 2006, asserts that these actions violate Title I of the Electronic Communications Privacy Act, 18 U.S.C. §§ 2510 -2522 (the "ECPA"), Title II of the ECPA, the Stored Communications Act, 18 U.S.C. §§ 2701 -2712, Ohio Revised Code § 2933.51,

et seq., as well as invasion of privacy, and intentional infliction of emotional distress. Section 2520 of Title 18 of the United States Code allows for actual damages, or statutory damages of $10,000 per violation or $100 per day of the violation, whichever is greater. 18 U.S.C. § 2520(c)(2) (2007). Title II of the ECPA authorizes an award of "the actual damages suffered by the plaintiff and any profits made by the violator as a result of the violation, but in no case…less than the sum of $1000." 18 U.S.C. § 2707(c).

Potter's motion for preliminary injunction, filed the same day as her amended complaint, demands that the Court enjoin Jeffery Havlicek from any use, disclosure, copying, dissemination or destruction of electronic communications, electronic files, data recordings, audio recordings, video recordings, and any other documents, objects, information, or data, in his possession or control which contain or relate to any statements, communications, writings, thoughts, images, sounds, ideas or personal information of Plaintiff Christina Potter." Doc. 16, at 1.

## II.     STANDARD OF REVIEW

Federal Rule of Civil Procedure 65 permits a party to a suit to seek injunctive relief if he believes he will suffer irreparable harm or injury while the suit is pending. In determining whether a grant of a temporary restraining order or a preliminary injunction is appropriate, the Court should consider: (1) the likelihood that the requesting party will succeed on the merits of the action; (2) whether the party requesting the relief will suffer irreparable harm without the grant of relief; (3) the likelihood or extent that granting the injunction will cause substantial harm to others; and (4) the degree to which granting the injunction will advance the public interest. *See, e.g., Deja Vu of Nashville, Inc. v. Metropolitan Gov't of Nashville and Davidson County,* 274 F.3d 377, 400 (6th Cir. 2001); *Wonderland Shopping Ctr. Venture Ltd. P'ship v. CDC Mortg. Capital, Inc.,* 274 F.3d 1085, 1097 (6th Cir. 2001); *McPherson v. Michigan High Sch. Athletic Ass'n, Inc.,* 119 F.3d 453, 459 (6th

Cir. 1997) (en banc); *Washington v. Reno,* 35 F.3d 1093, 1099 (6th Cir. 1994).  These four different considerations are not required elements of a conjunctive test but are rather factors to be balanced. *Washington,* 35 F.3d at 1099.  In any case, "[t]he complaint or motion of the party seeking such relief must identify specific facts and reasons demonstrating the existence and extent of the immediate injury and why it is irreparable."  *City of Parma, Ohio v. Levi,* 536 F.2d 133, 135 (6th Cir. 1976).

A hearing is not always necessary on a motion for a preliminary injunction.  *Bradley v. Pittsburgh Bd. of Educ.*, 910 F.2d 1172 (3rd Cir. 1990).  According to *Wright & Miller*:

> preliminary injunctions are denied without a hearing, despite a request therefor by the movant, when the written evidence shows the lack of a right to relief so clearly that receiving further evidence would be manifestly pointless.  This practice is supported by Rule 78, which provides that "the court may make provision by rule or order for the submission and determination of motions without oral hearing * * *," and by the fact that Rule 65 does not explicitly require an oral hearing on a preliminary injunction motion.

11A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure*, § 2949.

### III.     Analysis

Plaintiff's motion for preliminary injunction only develops 18 U.S.C. § 2511 as a basis for granting her motion.  For this reason, the Court will likewise confine itself to an analysis of this federal claim in determining the merits of the motion.

#### A.     The Likelihood of Success on the Merits

Title 18 U.S.C. § 2511, provides:

> § 2511. Interception and disclosure of wire, oral, or electronic communications prohibited
>
> (1) Except as otherwise specifically provided in this chapter any person who–

> (a) intentionally intercepts, endeavors to intercept, or procures any other person to intercept...any wire, oral, or electronic communication; [or]
>
> * * *
>
> (c) intentionally discloses, or endeavors to disclose, to any other person the contents of any wire, oral, or electronic communication, knowing or having reason to know that the information was obtained through the interception of a wire, oral, or electronic communication in violation of this subsection;
>
> ***
>
> shall be punished as provided in subsection (4) or shall be subject to suit as provided in subsection (5).

18 U.S.C. § 2511.

Among the actions Plaintiff requests this Court to enjoin is the presentation of her electronic communications in the Greene County Court of Common Pleas. Apropos of this request, the Court notes a statutory mandate to suppress evidence in certain instances of intercepted communications:

> Whenever any wire or oral communication has been intercepted, no part of the contents of such communication and no evidence derived therefrom may be received in evidence in any trial, hearing, or other proceeding in or before any court, grand jury, department, officer, agency, regulatory body, legislative committee, or other authority of the United States, a State, or a political subdivision thereof if the disclosure of that information would be in violation of this chapter.

18 U.S.C. § 2515.

This provision is limited, however, to "wire or oral communcation[s]," which, a review of the statutory definitions reveals, does not encompass "electronic communication[s]" such as email messages:

> As used in this chapter--
>
> (1) "wire communication" means any aural transfer made in whole or in part through the use of facilities for the transmission of communications by the aid of wire, cable, or other like connection

-7-

> between the point of origin and the point of reception (including the use of such connection in a switching station) furnished or operated by any person engaged in providing or operating such facilities for the transmission of interstate or foreign communications or communications affecting interstate or foreign commerce;
>
> (2) "oral communication" means any oral communication uttered by a person exhibiting an expectation that such communication is not subject to interception under circumstances justifying such expectation, but such term does not include any electronic communication;
>
> * * * *
>
> (4) "intercept" means the aural or other acquisition of the contents of any wire, electronic, or oral communication through the use of any electronic, mechanical, or other device[;]
>
> * * *
>
> (12) "electronic communication" means any transfer of signs, signals, writing, images, sounds, data, or intelligence of any nature transmitted in whole or in part by a wire, radio, electromagnetic, photoelectronic or photooptical system that affects interstate or foreign commerce, but does not include--
>
>> (A) any wire or oral communication;
>>
>> (B) any communication made through a tone-only paging device;
>>
>> (C) any communication from a tracking device (as defined in section 3117 of this title); or
>>
>> (D) electronic funds transfer information stored by a financial institution in a communications system used for the electronic storage and transfer of funds;

18 U.S.C. § 2510.  Because the suppression provision excludes illegally intercepted wire and oral communications from the courtroom, but does not mention electronic communications, several courts, including the Sixth Circuit, have concluded that Congress intentionally omitted illegally

intercepted electronic communications from the category of cases in which the remedy of suppression is available.

"[W]e cannot under the ECPA grant appellant's requested remedy-suppression. The ECPA does not provide an independent statutory remedy of suppression for interceptions of electronic communications." *United States v. Meriwether*, 917 F.2d 955, 960 (6th Cir. 1990) (citing 18 U.S.C. § 2518(10)(c) (1988); and S. Rep. No. 99-541, 99th Cong., 2d Sess. 23, reprinted in 1986 U.S. Code Cong. & Admin. News 3555, 3577)); *United States v. Jones*, 364 F. Supp. 2d 1303, 1306 (D. Utah 2005) (quoting *United States v. Steiger*, 318 F.3d 1039, 1050 (11th Cir. 2003)) (" The Act's plain text…is unambiguous, leaving little room for argument. In 1986, Title I of the ECPA amended the federal Wiretap Act to include electronic communications. Previously, the Act had only applied to the interception of wire and oral communications. However, as the Eleventh Circuit has noted, "[d]espite the fact that the ECPA amended numerous sections of the Wiretap Act to include 'electronic communications,' the ECPA did not amend § 2515.").

With this distinction in mind, the Court finds that it does not have the authority to forbid the disclosure of the allegedly intercepted communications to the state official determining custody of the Havlicek's children or any other state court proceeding. This is not to imply, however, that disclosure of the information in state court by Jeffery Havlicek or his attorney might not be actionable civilly or criminally under 18 U.S.C. § 2511. See, e.g., *United States v. Wuliger*, 981 F.2d 1497, 1507-08 (6th Cir. 1992). In any event, the Court's inability to enjoin the presentation of this evidence in state court does not resolve the question of whether the injunction on disclosing this information in other context should issue. Therefore, the Court will proceed to consider the appropriateness of relief in this case, beginning with Plaintiff's chances of succeeding on the merits.

Defendant's response to the motion for preliminary injunction claims that the keystroke recording and screen shot recording software do not record communications contemporaneously with the transmission of the communications. Contemporaneousness was an element originally introduced to 18 U.S.C. § 2511 when the law applied only to wire and oral communications.

Section 2511 was enacted in 1968 as part of Title III of the Omnibus Crime Control and Safe Streets Act of 1968, often referred to as the Federal Wiretap Act. Prior to the 1986 amendment by Title I of the ECPA, it covered only wire and oral communications. Title I of the ECPA extended that coverage to electronic communications. Cases such as *United States v. Turk*, 526 F.2d 654 (5th Cir. 1976), ruled that communications were not "intercepted" when the communications were not obtained contemporaneous with their transmission. In *Turk,* the government seized from a suspect's vehicle an audio tape of a prior conversation between the suspect and Turk. These courts reasoned that an "intercept" "require[s] participation by the one charged with an 'interception' in the contemporaneous acquisition of the communication through the use of the device." *Id.* at 658. Now that the ECPA has been extended to include electronic communications, the contemporaneous requirement, which was aimed at keeping answering machine tapes out of the expanse of the law, is being raised in the context of email interceptions. Email interceptions appear to be seldom, if ever, captured when the messages are actually in transit.

According to the Third Circuit in 2003, "Every circuit court to have considered the matter has held that an 'intercept' under the ECPA must occur contemporaneously with transmission." *Fraser v. Nationwide Mutual Ins. Co.*, 352 F.3d 107, 113 (3rd Cir. 2003) (citing *United States v. Steiger*, 318 F.3d 1039, 1048-49 (11th Cir. 2003); *Konop v. Hawaiian Airlines, Inc.*, 302 F.3d 868 (9th Cir. 2002); *Steve Jackson Games, Inc. v. United States Secret Serv.*, 36 F.3d 457 (5th Cir. 1994); and *Wesley College v. Pitts*, 974 F. Supp. 375 (D. Del. 1997)). This Court has not found,

however, a Sixth Circuit case deciding the necessity of proving contemporaneousness in the context of electronic communications.

This Court finds some merit in the position of Judge Reinhardt who opposes a hyper-technical application of the contemporaneous requirement emasculating the ECPA. *Konop v. Hawaiian Airlines, Inc.*, 302 F.3d 868, 886 (9th Cir. 2002) (Reinhardt, J., concurring in part, dissenting in part). This position was adopted by the First Circuit in 2005:

> We conclude that the term "electronic communication" includes transient electronic storage that is intrinsic to the communication process for such communications. That conclusion is consistent with our precedent. See *Blumofe v. Pharmatrak, Inc*. ( *In re Pharmatrak Privacy Litig*.), 329 F.3d 9, 21 (1st Cir. 2003) (a rigid "storage-transit dichotomy…may be less than apt to address current problems"); see also *Hall v. EarthLink Network, Inc.*, 396 F.3d 500, 503 n.1 (2d Cir. 2005) (rejecting arguments that "communication over the Internet can only be electronic communication while it is in transit, not while it is in electronic storage"). Consequently, in this context we reject Councilman's proposed distinction between "in transit" and "in storage."

*United States v. Councilman*, 418 F.3d 67, 79 (1st Cir. 2005) (*en banc*). This Court finds this to be the better reasoned position, and, in the absence of guidance from the Sixth Circuit, there is a substantial likelihood that this Court will adopt it.

Moreover, the Court views the screen shot software as distinct from the keystroke software in regards to the interstate commerce requirement. In contrast to the keystrokes, which, when recorded, have not traveled in interstate commerce, the incoming emails subjected to the screen shot software have traveled in interstate commerce. Additionally, there is no evidence before the Court to allow any conclusion that the technical aspects of the instant case result in Potter's claim being defeated by a lack of contemporaneousness, even if the Court were to find this element necessary.

Havlicek affies only that:

> The screen shot logging feature is similar to hitting the 'print-screen' button on most keyboards. It saves an image of what appeared on the monitor. Since the file is collected from the original computer, the file is again internal to a single computer and no transmission is required. The same effect may be produced by training a video camcorder on the monitoring screen in the privacy of one's own home. Further, the list of requested websites collected by the software is similar to history records automatically recorded in cookies saved by web browser software.

Doc. 16, at 12.

Even if there was testimony regarding the contemporaneousness of the screen shot software's recording, the Court would join with the decision reached in the Florida case of *O'Brien v. O'Brien*, 899 SO. 2d 1133, 1138 (Fla. Dist. Ct. App. 2005). That case, analyzing the application of a law similar to the ECPA, reasoned:

> The Wife argues that the communications were in fact stored before acquisition because once the text image became visible on the screen, the communication was no longer in transit and, therefore, not subject to intercept. We disagree. We do not believe that this evanescent time period is sufficient to transform acquisition of the communications from a contemporaneous interception to retrieval from electronic storage. We conclude that because the spyware installed by the Wife intercepted the electronic communication contemporaneously with transmission, copied it, and routed the copy to a file in the computer's hard drive, the electronic communications were intercepted in violation of the Florida Act.

*O'Brien*, 899 So. 2d at 1137.

Defendant raises another hurdle to success on the merits, however, by referring to the case of *United States v. Ropp*, 347 F. Supp. 2d 831, 837 (C.D. Cal. 2004), which focuses on the requirement in 18 U.S.C. § 2510(12) that the interception be of an interstate or foreign communication or be of a communication affecting interstate commerce. *Id.* at 837-38. *Ropp* notes that keystroke software records the entirely internal transmission from the keyboard to the CPU, and records all keystrokes, whether they initiate signals destined to travel in interstate commerce or not.

The decision, however, seems to read the statute as requiring the communication to be traveling in interstate commerce, rather than merely "affecting" interstate commerce. It seems to this Court that the keystrokes that send a message off into interstate commerce "affect" interstate commerce.

The next issue raised in connection with prevailing on the merits is the possible relevance of an interspousal immunity to interceptions. The Court notes the case of *Beaber v. Beaber*, 322 N.E. 2d 910 (Ohio Ct. Com. Pl. 1974) ( aff'd *Beaber v. Beaber*, No. 4187 (Ohio App., 5th Dist., Aug. 4, 1975)). *Beaber* recognized an interspousal exception to the Ohio and federal wiretap laws. *Id.*, at 915. While *Beaber* was a common pleas court decision, it followed the Fifth Circuit case of *Simpson v. Simpson*, 490 F.2d 803 (5th Cir. 1974). Several courts have followed *Simpson*, and many have recognized the holding of *Beaber*. The Ohio Supreme Court has not seen fit to correct *Beaber*, and this Court thus concludes from this evidence that the Ohio Supreme Court would likely recognize the existence of an interspousal exception under Ohio Rev. Code §§ 2933.51 and 2933.58. But this is only relevant in the context of Plaintiff's state law claims. As Plaintiff points out, however, the Sixth Circuit has rejected the *Beaber* interpretation and does not recognize an interspousal exception to the ECPA. *United States v. Jones*, 542 F.2d 661 (6th Cir. 1976); *Fultz v. Gilliam*, 942 F.2d 396, 404 (6th Cir. 1991).

Finally, the Court must consider the question of whether Amy Havlicek consented to the interception by utilizing a computer to which her husband had access and by using a "remember me" feature on her email account. Defendant asserts that this constitutes consent by a party to the conversations, pursuant to which 18 U.S.C. § 2511(d) would defeat Plaintiff's claim. Defendant has not briefed this question adequately, but the Court is currently not of the opinion that such actions would provide a sufficient basis for a finding of implied consent. The Court agrees with Judge Smith, who has recently noted:

> courts have construed the "consent exception" broadly to include consent that is either express or implied. See e.g., *Griggs-Ryan v. Smith*, 904 F.2d 112, 116 (1st Cir. 1990); *United States v. Amen*, 831 F.2d 373, 378 (2d Cir. 1987). However, "[i]n light of the prophylactic purposes of Title III, implied consent should not be casually inferred." *Williams v. Poulos*, 11 F.3d 271, 281 (1st Cir. 1993). Implied consent is not constructive consent. *Griggs-Ryan*, 904 F.2d at 116. "Rather, implied consent is 'consent in fact' which is inferred 'from surrounding circumstances indicating that the party knowingly agreed to the surveillance.'" *Id.* at 116-17 (quoting *Amen*, 831 F.2d at 378) (emphasis added).

*Dukes v. ADS Alliance Data Systems, Inc.*, 2006 WL 3366308, *13 (S.D. Ohio Nov. 20, 2006).[2]

There is no evidence that Amy Havlicek knowingly agreed to the surveillance. Therefore, at this point, there is a substantial likelihood that Plaintiff could prevail on her claims that Jeffery Havlicek violated the ECPA.

**B.    Irreparable Harm**

Often times, cases considering the issuance of a preliminary injunction assume this element to be satisfied, since if a constitutional right is being threatened or impaired, a finding of irreparable injury is mandated. See *Elrod v. Burns*, 427 U.S. 347, 373 (1976), *American Civil Liberties Union of Kentucky v. McCreary County, Kentucky*, 354 F.3d 438, 445 (6th Cir. 2003). In the instant case, however, the Court pauses in consideration of the fact that issuance of the injunction Plaintiff

---

[2] While constructive consent is not recognized, yet another form of consent, not at issue here, is recognized:

> as long as the guardian has a good faith, objectively reasonable basis for believing that it is necessary and in the best interest of the child to consent on behalf of his or her minor child to the taping of telephone conversations, the guardian may vicariously consent on behalf of the child to the recording. Such vicarious consent will be exempt from liability under Title III, pursuant to the consent exception contained in 18 U.S.C. § 2511(2)(d).

*Pollock v. Pollock*, 154 F.3d 601, 610 (6th Cir. 1998).

requests would impose a governmental prior restraint on the free speech of Defendant, possibly in violation of First Amendment rights.

A review of case law in this area reveals that a plaintiff must meet a heightened threshold of irreparable harm in order to merit issuance of such an injunction. It was on the basis of a lack of evidence in this area that the Sixth Circuit once issued a mandamus ordering a district court to vacate a preliminary injunction that was issued to forbid the dissemination of information gained in violation of the ECPA:

> Without a doubt, the district court's temporary restraining order constitutes a prior restraint of the use of the video footage obtained in Dr. Berger's office. Protection of the right to information that appeals to the public at large and which is disseminated by the media is the cornerstone of the free press clause of the First Amendment. No matter how inappropriate the acquisition, or its correctness, the right to disseminate that information is what the Constitution intended to protect. Consequently, even prior restraint of the dissemination of national security information has been denied. *New York Times v. United States*, 403 U.S. 713, 91 S. Ct. 2140 (1971) (the Pentagon Papers case). Any prior restraint bears "a heavy presumption against its constitutional validity." *New York Times Co. v. United States*, 403 U.S. at 714, 91 S. Ct. at 2141 (quoting *Bantam Books, Inc. v. Sullivan*, 372 U.S. 58, 70 n.10, 83 S. Ct. 631, 639 n.10 (1963)). The temporary nature of the district court's order does not relax this presumption because "a prior restraint, by…definition, has an immediate and irreversible sanction." *Nebraska Press Ass'n. v. Stuart*, 427 U.S. 539, 559, 96 S. Ct. 2791, 2803 (1976). In order to support the temporary restraining order, Dr. Berger must show that he will suffer an irreparable harm great enough to justify a prior restraint in the face of this stringent standard.

*In re King World Productions, Inc.*, 898 F.2d 56, 59-60 (6th Cir. 1990). Plaintiff describes the harms to her as the risk of Defendant "continu[ing] use of the electronic communication and its contents in violation of law to further his interests in the divorce action and to harass, annoy, and inflict emotional injury upon Plaintiff." Doc. 16, at 4. Plaintiff has not explained what injury might befall her should Defendant use this information in his divorce proceeding, but the Court is willing

to accept that this would be yet another instance of potential embarrassment. Still the Court cannot imagine an injury that would approach the national security interests found insufficient in *New York Times v. Sullivan*. Thus, this factor weighs against issuance of the requested injunction.

**C.     Substantial Harm to Others**

Given that the Court has already precluded the possibility of suppressing the presentation of evidence in the Havlicek's divorce action, there appear no other bases asserted by Defendant of substantial harm to others possibly resulting from the issuance of the requested injunction. The Court notes, however, the Constitutional harm that would befall Defendant from a prior restraint on speech.

**D.     The Public Interest**

Because the public interest is served by preventing the violation of constitutional rights, *Chabad of Southern Ohio & Congregation Lubavitch v. City of Cincinnati*, 363 F.3d 427, 436 (6th Cir. 2004) (citing *Deja Vu of Nashville, Inc. v. Metro. Gov't of Nashville and Davidson County, Tennessee*, 274 F.3d 377, 400 (6th Cir. 2001)), and because the Court will not consider enjoining presentation of evidence in the divorce and child custody hearings in state court, this factor weighs against issuing the requested injunction.

**E.     Conclusion of Preliminary Injunction Analysis**

There does appear to be a substantial likelihood that Plaintiff could prevail in her case against Defendant. In order for a preliminary injunction restraining free speech, however, Plaintiff must meet a heightened threshold of irreparable harm, which Plaintiff has not done. Moreover, while no substantial harm will inure to others should the injunction issue, the public interest is best served by avoiding potential violations of the United States Constitution. Therefore, because a

balancing of the relevant factors weighs against granting the requested injunction, Plaintiff's Motion for Preliminary Injunction, Doc. 16, will be **DENIED**

**IV.     Discovery**

Matters regarding discovery also appear to require the Court's attention, as according to Plaintiff, Defendant has refused to "identify, disclose, and/or produce the electronic files, records, recordings, communications, and/or the computers containing the electronic communications or other evidence relevant to this matter." Doc. 16, at 1. Defendant has informed the Common Pleas Court of Greene County Ohio, Division of Domestic Relations "that he has legally obtained access to electronic evidence and documents which he intends to submit to th[e] Court." Doc. 16, at 10. Defendant further informed the Greene County Court of Common Pleas that, if the divorce proceeds to trial, he intends to submit to it:

> approximately 80 keyboard and website log files in *.html format and a similar number in an alternative *.csv format; over 2000 individually time and date stamped automated screen captures in *.jpg format; approximately six video tapes in DV tape format; approximately six audio tapes in mini-audio tape format; numerous files produced from defendant correspondence while in the marital household mostly in *.bmp, *.gif, or *.jpg formats; approximately 24 electronic documents from diaries, love letters, etc..., in *.pdf, *.doc types of formats mostly taken directly off the Dell hard drive.

*Id.* at 13. Defendant is hereby **ORDERED** to provide Plaintiff the 80 keyboard and website log files in *.html format and a similar number in an alternative *.csv format; over 2000 individually time and date stamped automated screen captures in *.jpg format; approximately six video tapes in DV tape format; approximately six audio tapes in mini-audio tape format; numerous files produced from defendant correspondence while in the marital household mostly in *.bmp, *.gif, or *.jpg formats; approximately 24 electronic documents from diaries, love letters, etc..., in *.pdf, *.doc types of formats mostly taken directly off the Dell hard drive within 10 days.

**CONCLUSION**

Because the E.C.P.A. does not provide for the relief of suppression of illegally intercepted electronic communications sought to be use as evidence in a court case, and because a balancing of Plaintiff's impending irreparable harms and the public interest in the requested injunction against Plaintiff's likelihood of success on the merits of her claims weighs in favor of not granting the requested injunction, Plaintiff's Motion for Preliminary Injunction, Doc. 16, is **DENIED**.

**DONE** and **ORDERED** in Dayton, Ohio on Wednesday, February 14, 2007.

s/Thomas M. Rose

_____
THOMAS M. ROSE
UNITED STATES DISTRICT JUDGE